### STATE ex GAUVEY v LOFTON

Ohio Appeals, 2nd Dist, Montgomery Co

No 1082. Decided May 4, 1932

D. H. Wysong, Dayton, for plaintiff in error.

Roland W. Baggott, Dayton, for defendant in error.

HORNBECK, J.

In as much as the parties waived a jury and tried the case to the court the judge acted not only as judge but as jury, therefore, the dismissal of the cause at the conclusion of plaintiff's case required both the

action of the judge determining the law of the case and as a jury passing upon the facts as then presented. As there was no question of law to determine the court only had to act as a jury and weigh the evidence to determine whether or not as a trier of the facts, the plaintiff had sustained its case. The order of dismissal being general is tantamount to a general verdict and we must give it every legal intendment which will support its regularity and correctness and regard the record as free from error until the contrary clearly appears. **McHugh v State, 42 Oh St, 145.**

The narrow question then is, was the finding and order of the trial court acting as a jury manifestly against the weight of the evidence. The plaintiff had to prove its case by a preponderance of the evidence. The judge had a right, within reasonable limitations, to believe or disbelieve the testimony of the witnesses in whole or in part **(Fink v State, 11 Abs, 526)** to determine the probability or improbability of their statements and if upon a consideration of this testimony the court believed that the State had not established its case by the burden of proof required it was not necessary to proceed and take testimony of the defense.

We are frank to say that our first impression of this case was that the petition should not have been dismissed and we are now of opinion that, had we been trying the case, we would have required the defendant to take the stand and under oath give his version of the charge against him. If there had been a jury and the court had instructed a verdict and dismissed the case at the conclusion of plaintiff's testimony, we would have been required under **Pope v Mudge, 108 Oh St, 92** to have reversed.

If we knew definitely upon what theory the court found against the plaintiff and it was pointed out in the record we might accord plaintiff in error the relief sought. There is much in this record to support plaintiff's case. The relator testifies that she never had intercourse with any person other than the defendant. Her statement that she menstruated in June and July, if true, would not change the fact that in all probability she conceived in May. That such condition is not unusual is well recognized in Herzog in his Medical Jurisprudence, at paragraph 874:

"As little as the interruption of the menstruation is a certain sign of pregnancy, even so continued menstruation is not a certain sign that pregnancy does not exist. Many women menstruate during the first few months of pregnancy, a real menstrual flow coming from the uterus, in other cases this quasi-menstruation coming only from the cervix. * * * Some other (young girls) menstruate during the whole term of pregnancy."

It is undisputed that the child when born was normal. It was born on February 12, 1931 and as it was normal it is probable that it was conceived sometime in May. Any earlier or later date would not be compatible with the time within which a normal child is born. Notwithstanding the testimony of the relator that she had menstruated subsequent to May 10th, 1930 the date of the first intercourse as fixed by her, the child may have been conceived prior to her menstruation. Then too, from the record it is not improbable that relator and defendant had sexual intercourse on the night of May 17th, 1930, and this date could have been the time when relator conceived. Though the story of relator that she was in a semi-conscious condition on the night of the 17th of May when defendant was in bed with her and that defendant may have had intercourse resulting in her pregnancy seems improbable, it could have occurred. It is recognized in Medical Jurisprudence that:

"The occurrence of a woman being impregnated during unconsciousness, either deep sleep from exhaustion or while unconscious from the administration of knock-out drops * * *, the administration of morphine, * * * from the administration of a general anaesthetic, during hypnotism, inebriation, or coma, has been proved in many cases."

Herzog, Medical Jurisprudence, Paragraph 905.

If relator had purposed to frame the defendant it seems improbable that she would have testified as she did.

But we do not have the specific proposition upon which the trial court decided this case and it may be upon the whole record he was of opinion that the plaintiff's evidence upon weighing it was not credible enough to support her case. We therefore cannot say that the finding and order of the trial court dismissing the plaintiff's petition was manifestly prejudicial to the plaintiff. The judgment will therefore be affirmed.

ALLREAD, PJ, and KUNKLE, J, concur.